*Geo. V. Payne, for appellant.*

*Jas. F. Askew, for appellees.*

---

## JOHN A. GRAHAM ET AL. *v.* H. B. JONES.

[Abstract Kentucky Law Reporter, Vol. 3—620.]

**Reversal for Excessive Recovery.**

> A finding by a commissioner, approved by the chancellor, charging a party at the rate of $7 per day for the use of a two-horse team used for hauling in the city of Louisville, is so excessive and unreasonable as to warrant the court in reversing a judgment based upon it.

APPEAL FROM LOUISVILLE CHANCERY COURT.

February 16, 1882.

OPINION BY JUDGE PRYOR:

There are so many exceptions filed to the report of the commissioner in this case, and so much uncertainty as to the correctness of many of the items, that it is almost impossible to make an accurate calculation or settlement of the accounts between these parties. The appellee has produced his books of account, and as he was cashier and bookkeeper, with the right of access to them by the appellant, they must be taken as cor-

rect unless disproved, and particularly when the appellant, who kept a book known as the "drivers' team book," refuses to produce it for inspection that the commissioner might make a full investigation of the accounts. If it is a book of the firm and kept by him for the purpose of showing the teams employed or the days in which they were engaged at work, he ought to have produced it, and when failing to do so, the commissioner would only resort to other evidence in order to make the settlement, and ascertain facts that this book would likely have disclosed. It seems to us, however, that the report is radically wrong in charging appellee the sum of $13,765 for the hire or use of these teams for 207 days, deducting the costs of keeping the teams, hire, and other expenses in running them, amounting to $7,316, and leaving the appellant indebted to the firm for the use of these teams for 207 days in the sum of $6,449.

They were working together as partners for near 16 months, and their profits were only $11,871, not, of course, including their individual accounts. They seemed to be doing a good business, actively engaged in hauling during these periods, with the energy and labor of either partner devoted to the firm interests, and no doubt made as much profit as their business would justify. The commissioner has charged the appellant with the use of these teams (not as many as were used by the firm), giving him credit for their keeping, hire, etc., the sum of $6,449 for a period not exceeding one-half the time that the partnership continued. If the appellant had taken the teams when the partnership began and used them without the consent of the other partners, he would have made for the firm a much larger sum of money. To charge the appellant at the rate of $7 per day for two-horse teams (excluding Sundays) was erroneous. The chancellor or commissioner should have looked to the character of the business in which they were engaged, and the ordinary net profits realized by the use of such teams in the business in which they were engaged. It is hardly reasonable that one would agree to take a team at $7 for each working day for the period of 6 months to be employed in the ordinary business of hauling in the city of Louisville, although he might be allowed to deduct the cost of keeping. The inquiry, it seems to us, would be, to those conversant with such an employment,

what would likely be the net profits realized from the use of such teams, in the business in which they were engaged, for the period of 207 days. In the estimate the probable loss of time would be considered, the expense of drivers, keeping, shoeing and other necessary expenditures connected with such an undertaking. We are satisfied that to make appellant liable for $6,449 for the use of 5 two-horse teams, 2 four-horse teams and 2 drays for 207 days is exorbitant.

Nor do we understand the nature of the credits given the appellant in the judgment. Is he not entitled to the whole of the $24.24 as a credit on his account? Of this we are not certain, as the accounts are so stated as to render it difficult to determine how the credit should be applied. As this case must be reversed, we think the entire report should be disregarded and the case referred back to the commissioner as if no former reference had been made. It is evident that the item of hire for teams, etc., is greatly too much, and as this constitutes the principal item in the settlement the entire case should go back to the commissioner for an additional settlement and report.

On the appeal of Mundy and Parsons it appears that on their motion it is ordered that the receiver pay them the sum of $216 out of the fund in court in this action. This order, it is alleged, was made by consent, but the attorney on the other side disclaims, or rather denies, that any such agreement was made. If the money was obtained for Graham it was error to have made such an order, and if the order was made at the instance of the teamster company it should be paid back by them. None of the funds could be taken from the control of the chancellor, particularly by the attorneys of Graham, who was charged with being in default. The attorneys seem to have obtained the money on their own motion and ought to replace it. Of course the chancellor will not deprive them of the right to it if on final settlement Graham is entitled to it. The rule, having been made absolute as to Mundy, must be *affirmed*.

The judgment as to Graham is *reversed* and cause remanded for further proceedings consistent with this opinion.

*M. Mundy, for appellants.*

*Ias. A. Beattie, John R. M. Polk, for appellee.*